(21 App. Div. 552.)

### STETSON et al. v. BRENNEN et al.

(Supreme Court, Appellate Division, First Department. November 5, 1897.)

1. INFRINGEMENT OF TRADE-MARK—INJUNCTION.
  Proof of a single instance of infringement of a trade-mark, known at the time to the person injuriously affected thereby, does not constitute, by itself alone, a sufficient basis for injunctive relief in a suit instituted more than seven years later.

2. SAME—WHAT CONSTITUTES.
  An action to enjoin infringement of a trade-mark cannot be sustained by proof of an infringing act which consists in a mere compliance with an express order, emanating from the plaintiff, and given for the purpose of creating a cause of action.

3. SAME—EVIDENCE.
  The mere possession by a defendant of a die for the printing of plaintiff's trade-mark, which the defendant decided, as soon as it was made, not to use, and from the existence of which no damage has resulted, is too trivial a matter to constitute a basis for injunctive relief.

Appeal from special term.

Action by John B. Stetson and John B. Stetson Company against Thomas F. Brennen and James L. Carr. From a judgment dismissing the complaint, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

John Henry Hull, for appellants.
William A. Jenner, for respondents.

O'BRIEN, J. This is an action for an accounting for damages and for an injunction restraining the defendants from selling hats containing the plaintiffs' trade-marks "Boss Raw Edge" and "Stetson Style." It appeared from the evidence that the plaintiff John B. Stetson, about 1872 or 1873, used the phrase "Boss Raw Edge" upon certain classes of hats by embossing or stamping it upon the sweat leather; but the evidence is conflicting as to whether the word "Boss" was adopted by the said plaintiff as a mark for that style of hat, or was employed to indicate the character of the edge of the brim, namely, that it was a raw edge; that is, without binding, and more or less curled. In view, however, of the other facts appearing, it is unnecessary to determine whether the word "boss," as used, was de-

scriptive, or a fanciful arbitrary word known as a trade-mark of the plaintiff, because the only infringing act suggested was a sale by the defendant Carr, some time prior to September, 1887, of some 67 dozen hats with the words "Boss Raw Edge" in them.  This was proved by an admission of Mr. Carr, made in September, 1887, in a suit of Stetson against Woodruff.  There was testimony that this was the only sale of that kind made by the defendants.  At the time of such sale the plaintiff company was not in existence, the business being then carried on by John B. Stetson, who afterwards trans-ferred the same to the plaintiff company.  There was no evidence that the defendants threatened to use the words again, and the fact that they used them in a single instance, some time prior to September, 1887 (how long prior does not appear), affords no inference that they intend to use them in the future.  As the alleged infringement was committed more than seven years before this suit was brought, and then known to the only person interested therein and affected thereby, a sufficient showing was not made for injunctive relief; nor does it appear that there was any use by the defendants, actual or threatened, which needed to be enjoined.

We are also of the opinion that no cause of action was made out with respect to the hats marked "Stetson Style."  The evidence shows that the only occasion upon which the defendants ever em-ployed that term in connection with the sale of any hats was when one Richardson, an employé of the plaintiffs, gave an order for hats to one of the defendants' salesmen, a condition of the order being that the term "Stetson Style" should be stamped upon the hats.  It was not shown that the defendants were in the habit of making hats with the stamp "Stetson Style" upon them, or ever kept any such hats in stock.  While it may be inferred from the testimony that when the order was received from Richardson the defendants did not know that he was an employé of the plaintiffs, on the other hand, it appears that the order was received, not by one of the defendants personally, but by an employé; the defendant Carr himself, at the time the order was given, being in the West.  The direction was given, however, by the defendants' salesman, to have the hats made, and, although it does not appear that he had any authority to do so, if we assume that his action bound the defendants, we have, on the other hand, the fact that this was a special order under which the hats were made, and that the defendants were not in the habit of keeping, nor did they keep, in stock hats with the mark "Stetson Style" upon them.  There can be no doubt of the right of a plaintiff whose trade-mark is being infringed to purchase from one who in-fringes goods bearing the mark, with a view to making evidence in an action to be brought; but that is quite a different thing from giving a special order to have the wrongful act committed, and then taking advantage of it for the purpose of basing thereon an action for an injunction and damages. Assuming that the term "Stetson Style" was the property of the plaintiff, while we may concede that the con-duct of the defendants was reprehensible, it was equally reprehensi-ble on the part of the plaintiffs to send one of their employés to or-der and specially direct the commission of the wrongful act; and we

think it would be inequitable, upon such a showing, to accord to the plaintiffs either an injunction or damages as the result of such a transaction.

It is contended, however, that, even though an injunction should not be granted on either of the foregoing grounds, the plaintiffs are entitled to one because it appears that the defendants are in possession of a brass die cut and engraved "Stetson Style," and that this die was cut and engraved some five years before the bringing of this suit, and was in their possession at the time of the trial.    In fact, it was offered in evidence upon the trial.    Its existence, however, is fully explained by the defendant Carr, who testifies that he took an order from a customer for some hats stamped with his die, and that the customer wanted the words "Stetson Style" printed under his die, and the die was cut for that purpose; that on his return from the West, where the order was taken, he gave instructions not to use it, and wrote to the customer that he could not comply with that request; and that the die was never used except in connection with the sale already spoken of through Richardson in 1894.   The suggestion that the mere existence of the die in the possession of the defendants entitled the plaintiffs to an injunction, when we recall that from that fact no damage resulted, is met by the principle "De minimis non curat lex."

There are many rulings upon evidence excepted to, but the only one that need be adverted to is that admitting the testimony as to what passed between the plaintiffs' attorney and the plaintiffs, which ruling, it is insisted, is in violation of the provision of section 835 of the Code of Civil Procedure, that "an attorney or counselor at law shall not be allowed to disclose a communication, made by his client to him, or his advice given thereon, in the course of his professional employment."   The attorney for the plaintiffs had taken the stand on their behalf, and testified to admissions made by one of the defendants in regard to the sale under the order given by Richardson for hats with the words "Stetson Style" in them, and upon cross-examination the question was put to him, "Did you request them to be obtained?"—referring to whether the hats had not been bought by direction of the plaintiffs' counsel.   This was objected to as calling for testimony as to a confidential relation, was allowed, and an exception taken.   The testimony thus elicited was: "I had generally given instructions to John B. Stetson & Company to purchase hats as evidence against infringers.   I gave those instructions generally to the company.   *   *   *   At the time of the alleged purchase of these hats, I don't think I had given instructions at that time to any particular persons, except the plaintiffs generally by letter."   In view of the attitude of the plaintiffs' attorney in offering himself as a witness for his client, it is doubtful whether he was not required to submit to a cross-examination as to his connection with the transaction.   But, if we strike out this testimony as incompetent, and assume that certain facts, which the plaintiffs were prevented by the rulings of the court from establishing by experts, were proven in the case, there still remain without any substantial impairment the main facts upon which the alleged infringements are predicated; and,

taking the position most favorable to the plaintiffs, if we assume that they had a trade-mark in the words "Boss Raw Edge" and "Stetson Style," we do not think that the course pursued by the plaintiffs— in the one instance waiting more than seven years after knowledge had been brought home to them of the acts complained of before bringing suit, and in the other suggesting and inducing the wrongful act—presents any such equitable consideration as should move the court to grant injunctive relief.

We think. therefore, that the case was properly disposed of below, and that the judgment should be affirmed, with costs. All concur.